```
                UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF NORTH CAROLINA
                      WESTERN DIVISION


_____
                                        )
UNITED STATES OF AMERICA,               )
                                        )
              vs.                       )
                                        )      5:18-CR-325-1-D
JUAN FRANCISCO LANDEROS-MIRELES,        )
                                        )
                   Defendant.           )
_____)



                   FEBRUARY 19, 2019
                   SENTENCING HEARING
          BEFORE THE HONORABLE JAMES C. DEVER, III
                UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

On behalf of the Government:

SEBASTIAN KIELMANOVICH, ASSISTANT U.S. ATTORNEY
U.S. Attorney's Office
310 New Bern Avenue, Suite 800
Raleigh, North Carolina  27601
sebastian.kielmanovich@usdoj.gov

On behalf of the Defendant:

JAMES E. TODD, JR., ESQ.
Federal Public Defender's Office
150 Fayetteville Street Mall
Suite 450
Raleigh, North Carolina  27601-2919
james_todd@fd.org

Mr. Javier Castillo, Jr., Interpreter

                Wanda B. Constantino, CVR-CM-M
                    WordServices, Inc.
                    1102 Driftwood Drive
              Siler City, North Carolina  27344
                      919.548.4914
                  wanda@mywordservices.com
          Stenomask with computer-aided transcription

(Tuesday, February 19, 2019, commencing at 9:19 a.m.)

THE COURT: We'll next take up the sentencing of Mr. Juan Landeros-Mireles.

MR. TODD: Your Honor, if you can just give me a -- I want to make sure my personal phone is turned off. I can't remember if I did or not.

(Pause in proceedings.)

THE COURT: Good morning, Mr. Todd. Is the defense ready?

MR. TODD: Yes, Your Honor.

THE COURT: Good morning, Mr. Kielmanovich. Is the Government ready?

MR. KIELMANOVICH: Yes, Your Honor.

THE COURT: At this time I'd ask that the interpreter be sworn.

(The interpreter, Javier Castillo, Jr., was sworn.)

THE COURT: At this time I'd ask that the Defendant be sworn or affirmed.

THE CLERK: Please place your left hand on the Bible and raise your right hand, and state your name for the record.

THE DEFENDANT: I'm not hearing, so, you know. What was that? Can you say that again?

THE CLERK: Yes. Please state your name for the record.

THE DEFENDANT: Oh. Juan Francisco Landeros-Mireles.

(The defendant, Juan Landeros-Mireles, was sworn.)

THE COURT: Mr. Landeros-Mireles, do you understand that having been sworn, that your answers to my questions are subject to the penalty of perjury, and if you were to lie to me you could be prosecuted for perjury or for making a false statement?

THE DEFENDANT: Yes, I know.

THE COURT: Have you taken any kind of medicine or any other substance in the last 48 hours that would affect your ability to hear and understand this proceeding, sir?

THE DEFENDANT: No.

THE COURT: With the assistance of the interpreter, are you able to hear and understand these proceedings, sir?

THE DEFENDANT: Yes.

THE COURT: Do you know why you're here today?

THE DEFENDANT: Yes.

THE COURT: Mr. Todd, do you have any reason to doubt Mr. Landeros-Mireles' competence to go forward today?

MR. TODD: No, Your Honor.

THE COURT: Does the Government have any reason to doubt Mr. Landeros-Mireles' competence to go forward today?

MR. KIELMANOVICH: No, Your Honor.

THE COURT: Based on Mr. Landeros-Mireles' answers to my questions, my observations of Mr. Landeros-Mireles, and the answers from counsel, I find that he is competent.

Sir, you're here today having entered a plea of guilty to a charge of voting by an alien in violation of 18 U.S.C. Section 611(a). The guidelines are advisory. A presentence report has been prepared. The report indicates the Total Offense Level is 4, a Criminal History Category is 1, and the Advisory Guideline Range is 0 to 6 months.

Mr. Todd, did you receive a copy of that presentence report?

MR. TODD: Yes, Your Honor.

THE COURT: Mr. Landeros-Mireles, did you receive a copy of that report, sir?

THE DEFENDANT: Yes.

THE COURT: And did you speak with your lawyer Mr. Todd about that report?

THE DEFENDANT: Yes.

THE COURT: At this time the Court directs that the presentence report be placed in the record under seal in accordance with Rule 32 of the Federal Rules of Criminal Procedure. The Court accepts it as an accurate presentence report except as to matters in dispute as set forth in the addendum. The report indicates there's no objections to the report from either the Government or the defense.

Mr. Todd, is it still the case there are no objections for the defense?

MR. TODD: That's correct, Your Honor.

THE COURT: Is that correct, Mr. Landeros-Mireles?

THE DEFENDANT: Huh-uh.

THE COURT: So do you agree with your lawyer or not agree with your lawyer? Your lawyer told me there are no objections. Is that correct?

THE DEFENDANT: Oh, yes. I'm sorry, yes. What he said was right.

THE COURT: Okay. Mr. Kielmanovich, no objection to the report from the Government?

MR. KIELMANOVICH: No objection, Your Honor.

THE COURT: The Advisory Guideline Range is 0 to 6 months. Any objections to that Advisory Guideline Range?

MR. KIELMANOVICH: No, Your Honor.

THE COURT: Any objections to that Advisory Guideline Range, Mr. Todd?

MR. TODD: No, Your Honor.

THE COURT: I'll hear first from Mr. Todd, then I'll hear from the Defendant, and then I'll hear from Mr. Kielmanovich.

MR. TODD: Thank you, Your Honor.

Mr. Gordon has already explained the nature of the offense, and I would like to focus on the specific context which brings Mr. Landeros here today.

As the PSR sets forth, you know, the uncontested context of his ended up being registered started with him

seeing across the street a line of people in Wilson, across the street from the medical clinic where he goes. That place usually gives out -- what they call dispenses in Spanish -- like a food pantry type thing. So we thought he was going across the street to the food pantry. Waits in line. He ends up getting registered to vote. He's functionally illiterate in English. The person that he interacted with is the person that filled out the form and instructed him to sign it, and that's how he was registered.

That scenario is consistent, Your Honor, with -- I've had six of these cases before Chief Judge Boyle and also Judge Flanagan. And I would ask the Court to consider -- diluting the vote is a very serious matter. I understand that. I think the crux of the problem is the very -- what Chief Judge Boyle described is a very porous registration process for which there's no control or accountability.

My experience with these cases is anybody can register anybody to vote, and once that form is submitted to the North Carolina Board of Education [sic], there's no way of tracking who filled out the form. It's just accepted that that person has been registered and is sent a voter's card which instructs them to show up at the polling place.

So not to minimize dilution of voting, but I think the real problem that causes that dilution is something that's fixable in terms of the voter registration process itself.

THE COURT: There's two problems, though, really. I mean, again, as I said in the last case, I just -- it's inconceivable to me, utterly inconceivable to me that I could travel to another country and think I could vote. It's just absolutely up is down. It is just inconceivable that any rational human being could think they could just travel to some other country and vote. To me.

MR. TODD: Right.

THE COURT: As in terms of -- yes, I take your point about training people who register others, but I just -- the responsibility begins with the person, and I don't understand how any human being can be a noncitizen and travel to another country -- and even if they live there legally, albeit not as a citizen, think that they can vote. I just don't understand how that can be possible.

MR. TODD: All I know is, Your Honor, it seems that even the North Carolina Board of Elections, sometimes their volunteer staffers aren't aware. I mean, so in this case Mr. Landeros has been in this country for almost 50 years. He's been a legal resident since 1990, worked hard, raised three children. His education in Mexico was limited. He barely got a sixth-grade education. So --

THE COURT: Well, no, I take your point. Civic education in America is a disgrace. It is. Fundamentally. You know, and I'd say this. One of the greatest things I get

to do is preside at naturalization ceremonies.

MR. TODD: I understand.

THE COURT: And I tell the citizens, the new citizens, that they've studied and they've passed the test and that it's a shame, it's shameful that we can't give that citizenship test to every eighth-grader in this state and in this country and have them pass without studying. And data shows that we can't do that.

We need to change the curriculum. Tell them to get the word out 'cause they're going to be leaders, right? But, you know, we deal with the reality that we're in, but it is shameful that people -- and, again, it's sort of like first principles. Do you get to participate in self-governance as a noncitizen? The answer's no.

What else do you want to tell me?

MR. TODD: Well, he's worked hard his whole life. His work in landscaping ended him with a disability of degenerative arthritis in his knees. He rents a portion of a double-wide from a family. His monthly income is limited at this point to his 900 plus dollars in disability benefits. So in terms of his ability to pay a significant fine, I think, it's rather limited. I think the PSR report says positive cash flow, given his expenses, to be about $30 a month. He has sleep apnea, which requires him to use a device at night, so that the prospects of him being able to make more money than

he's making now, I think, is not feasible. He --

THE COURT: You don't think there's any room in expenses?

MR. TODD: I think there's some room.

THE COURT: He has a cell phone, right?

MR. TODD: I think there's some room.

THE COURT: I mean, again, what a wonderful country we live in. What a wonderful country that we live in that we as a society are caring for him, right? It is. It's truly a wonderful country, right? He's getting benefits, right?

MR. TODD: Well --

THE COURT: Isn't that what the report says?

MR. TODD: Right. And he worked here for 40 years, Your Honor.

THE COURT: I know.

MR. TODD: I mean, so --

THE COURT: Exactly.

MR. TODD: -- I think --

THE COURT: So, right. He's entitled to them. I agree.

MR. TODD: Right, right.

THE COURT: But what a wonderful, beneficent country, which I also think highlights a real fundamental problem with this crime. So what do you think? I'm going to -- I'm going to fine him.

MR. TODD: Yes, sir.

THE COURT: This is not some seatbelt violation to me.

MR. TODD: I understand. I understand. Well, you know, I would ask the fine not to exceed his monthly cash flow, which is $30 a month, which will end up being a little more than $300 over the course of the year.

THE COURT: So you don't think there's any room to cut expenses in that monthly budget? You think that's where I'm capped.

MR. TODD: Well, I don't think he can -- you can do any -- I don't think he can cut the rent.

THE COURT: Four hundred for groceries.

MR. TODD: A hundred dollars a week for --

THE COURT: $43 for a cell phone.

MR. TODD: Right.

THE COURT: $40 for public transportation.

MR. TODD: He can't drive, so he -- anytime he has to go to the doctor or wherever he wants to go, he has to pay somebody for gas to drive him. Because of his knee situation, he can't drive. I don't see how given his medical needs, his needs to have doctors' appointments, where that can be cut. I mean --

THE COURT: So you basically do think -- you think I'm limited to the cash flow that this -- the monthly cash

flow.  I just want to make sure I know your position.  I'm not saying I'm going to agree with you, but I just want to make sure I understand what you're saying as an advocate.

MR. TODD:  As an advocate --

THE COURT:  You think I'm limited in paragraph 28, and that's what limits me in the fine that I impose.

MR. TODD:  Well, to the extent that that need reflects a realistic budget, you know, I would say under *Booker*, that would be the guidance.  Obviously, you're capped by the statute, but that would be my argument that anything to exceed that I think would not be appropriate given his situation.

THE COURT:  Thank you.  All right.  I'll hear from the Defendant, if you'd like to make a statement, sir.

THE DEFENDANT:  Well, yes, I made a mistake in what I did, but, well, I -- I'm guilty.  I plead guilty for it.

THE COURT:  Thank you, sir.  I'll hear from Mr. Kielmanovich.

MR. KIELMANOVICH:  Thank you, Your Honor.

With respect to the medical condition, I find it surprising in paragraph number 27 that he didn't sign a release to probation to verify the information provided about his benefits.  I wouldn't think of any reason why somebody would not sign it.  I think it creates some questions of whether it's actually true.

Your Honor discussed before it's a very serious offense, and the Court has mentioned this. When individuals vote, they don't have the right; and those that do have the right to vote, those are citizens, their voice is not fully heard because people like this Defendant are diluting the vote, are generating an outcome that is not warranted since elections could turn one way or the other based on just a few votes, or as the Court stated, even on occasions one vote.

The Defendant did it in 2012, in 2016. I believe that because this Defendant applied for immigration benefits, he had to know what he was signing and he got benefits from the Government. Now he's registering to vote. There is a form that is being presented. And what we see is this type of position, "So we're not responsible for what that form says."

It just doesn't resist any rational analysis because it's just not convenient to understand what it says because I believe that when -- like in this case, there's even more than one election, the person knew or should have known. And if nothing else, it's willful blindness to the fact that any person, rational person, common sense and reason dictates that if you're not a citizen you can't vote.

The form speaks for itself. It says yes or no. "If you cannot answer yes, do not continue completing the form." All these discussions about training: I vote for more education for all workers for the Board of Elections, but this

is self-explanatory.  This is basic.  The form says yes or no. "Do not continue completing the form."  And these forms are being processed and these people are being registered to vote.

Now, the report here contains a very concerning statement that was made by the Defendant in paragraph 8.  It says that during the 2016 elections, he was asked if he was going to vote Republican or Democrat, and he responded, "*Para la señora*," which means in Spanish "for the lady."  And that then the employee at the polling location said, "Democrat," and let him vote.

So there's a very serious concern here that there may be some political reasons why some of these things are happening.

When we looked at this case, Your Honor, just like the others, the totality of the circumstances, I cannot but express the outrage at the fact that somebody could try to blame someone else, which they may be responsible, too, but then try to find cover in the fact that they were allowed to register.  Because registration is just one step of the process.

Many times the actual traveling to the polling station and being exposed to what I've personally seen, the signs and warnings, and still exercising not a right because they don't have it, but the vote itself.  Executing that vote when they should not have done so.  And to this day, that vote

has been counted.

Your Honor, we're asking that you consider in this case, similarly to the one before, imposing a sentence that reflects the seriousness of the offense that reminds the Defendant of the actions that brought him here and that sends a message to others that they will not engage in conduct such as the one that brought the Defendant before the Court.

Thank you, Your Honor.

THE COURT:  Anything else, Mr. Todd?

MR. TODD:  Just Mr. Kielmanovich -- he's mentioned before that when he goes to vote, there's big signs all over the place.  The fact of the matter is, when you go to vote in person, you are asked your name and your residence and then you're asked to sign on the list there.  There's no questions about citizenship at that point.

I vote in the small town of Spring Hope where the community center has the polling place.  And when I went to vote --

THE COURT:  And I -- and I --

MR. TODD:  -- in November --

THE COURT:  -- understand.  I mean, I know --

MR. TODD:  Right.

THE COURT:  -- what happens when you vote.  It gets back to this fundamental issue about how any noncitizen can think they can vote.

MR. TODD: Right.

THE COURT: It's just beyond me. But I -- we just -- we just disagree --

MR. TODD: Right.

THE COURT: -- on that.

MR. TODD: I just --

THE COURT: I mean, we just -- I understand what happens. Believe me, I vote every time -- every chance I get --

MR. TODD: Yes, sir.

THE COURT: -- because it's important.

MR. TODD: Yes, sir.

THE COURT: It's absolutely -- other than -- you know, other than being on a jury, those two are absolutely fundamental.

MR. TODD: Yes, sir.

THE COURT: And so I understand what goes on. Anything else?

MR. TODD: That's it, Your Honor.

THE COURT: All right, Mr. Landeros-Mireles. The Court recognizes its obligation to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in the statute.

I have considered all the arguments Mr. Todd has made. I have considered your statement, sir. I have

considered the position of the United States. I have considered the Advisory Guideline Range.

Among other things, I'm to consider the nature and circumstances of the offense and the history and characteristics of the Defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment, the need for the sentence imposed to deter others who might choose to engage in the criminal behavior that brings you here, the need for the sentence imposed to protect the public from further crime by you, the need for the sentence imposed to provide you with needed educational and vocational training in the most effective manner.

The statute lists numerous other factors. I have considered all those factors, although I won't mention each one individually.

As for the nature and circumstance of the offense, as we talked about here, voting by alien is a serious crime. The Supreme Court has repeatedly said appropriately that voting is a fundamental political right because it is preservative of all rights of the most fundamental significance under our constitutional structure.

And as such, it's limited to citizens. And the national legislature, the Congress, has criminalized those who are noncitizens who vote. They've made it a crime,

understandably, because it does dilute the votes of citizens. And history is filled with elections that are decided with really -- sometimes by one vote. And so when somebody who is not permitted to vote votes, it dilutes the votes of those who are permitted to vote under the law. So it's a very serious crime.

And you voted twice, in 2012 and in 2016. I recognize that you've been lawfully here pursuant to a green card for many years, and I take what Mr. Todd says about the circumstances that led you to register to vote. But at the end of the day, you are responsible for what you signed. You are responsible for what you signed. You are responsible for what you do. And I just don't believe that you didn't know you couldn't do this. I just don't believe it. I mean, you're smart. You're too smart for that when I look at the things you've done, the good things. And so I just don't accept the notion that somehow you didn't have any idea that you could do this.

Putting aside the issues of the problems with the registration systems, I'm going to impose a sanction of general deterrence. It's too important to people in general. This is not some seatbelt violation situation. A person who is not a citizen votes who gets caught and gets prosecuted, there's criminal consequences for that. There should be, because it's serious. Voting is serious.

So in light of the need for general deterrence, in light of the need for just punishment, it's the judgment of the Court that Juan Francisco Landeros-Mireles is hereby placed on probation for two years. The first two months of that probation, he will be confined to his residence. He'll be able to leave to go to the doctor, to go to church services, to go to work if he works, and as otherwise preapproved by probation.

He's going to be fined $1200. You'll pay $50 a month. $50 a month for every month you're on probation as a reminder that you did wrong and are being punished for that. And I've looked at the budget, and I think you can find $50 a month as a reminder that you shouldn't have done this.

You'll also owe a special assessment of $25. I think you can afford that as well.

I think I've appropriately calculated the Advisory Guideline Range, but I announce pursuant to *U.S. v. Gomez-Jimenez*, 750 F.3d 370 (4th Cir. 2014), that I'd impose the same sentence as an alternative variant sentence if I have miscalculated the Advisory Guideline Range.

You can appeal your conviction if you believe your guilty plea was somehow unlawful or involuntary or if there's some other fundamental defect in the proceeding that was not waived by your guilty plea.

You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think

your sentence is contrary to law. However, with few exceptions, any Notice of Appeal must be filed within 14 days of the judgment being entered on the docket in your case. If you're unable to pay the cost of an appeal, you may apply for leave to appeal *in forma pauperis*.

If you so request, the Clerk of Court will prepare and file a Notice of Appeal on your behalf.

Anything else today, Mr. Todd?

MR. TODD: No. Will that also be without electronic monitoring?

THE COURT: No electronic monitoring.

MR. TODD: Thank you, sir.

THE COURT: Anything else, Mr. Kielmanovich?

MR. KIELMANOVICH: No, thank you, Your Honor.

THE COURT: I thank counsel for their work here today. That will conclude the matter involving Mr. Landeros-Mireles.

(Proceedings concluded at 9:45 a.m.)

_____

(END OF TRANSCRIPT.)

_____

NORTH CAROLINA

CHATHAM COUNTY

<u>CERTIFICATION OF REPORTER</u>

I, Wanda B. Constantino, CVR-CM-M, contract court reporter for the United States District Court for the Eastern District of North Carolina, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the forgoing is a true and correct transcript of the proceedings held in the above-entitled matter;

That the proceedings were reported by me using the voice-writing (Stenomask) method; and

That the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 23rd day of February, 2019.

**Wanda Constantino**

Digitally signed by: Wanda Constantino
DN: CN = Wanda Constantino C = US O = WordServices, Inc.
Date: 2019.02.23 21:27:19 -05'00'

Wanda B. Constantino, CVR-CM-M
Contract Court Reporter